UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN S.,[1]
    *Plaintiff*,

v.

MICHELLE KING,[2] ACTING COMMISSSIONER OF SOCIAL SECURITY,
    *Defendant.*

No. 3:23-cv-1476 (VAB)

# RULING AND ORDER ON MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

John S. has filed an administrative appeal under 42 U.S.C. §§ 405(g) and 1383(c)(3) against the Commissioner of Social Security ("Commissioner"), seeking to reverse the decision of the Social Security Administration ("SSA") denying his claim for Title XVI Supplemental Security Income ("SSI") under the Social Security Act. Mot. to Reverse or Remand the Decision of the Commissioner, ECF No. 15 (March 4, 2024).

The Commissioner has moved to affirm the decision. Mot. to Affirm the Decision of the Commissioner, ECF No. 19 (May 2, 2024).

For the reasons explained below, John S.'s motion is **DENIED**, and the Commissioner's motion is **GRANTED**. The decision of the Commissioner is **AFFIRMED**.

---

[1] In opinions issued in cases filed under § 405(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial in order to protect the privacy interests of social security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. Under Federal Rule of Civil Procedure 25(d), Michelle King should be substituted for Martin O'Malley as Defendant in this suit. No further action need be taken. 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   A. **Factual Background**[3]

   i.  <u>Medical History</u>

John S. had reached the age of 52 at the time of the Administrative Law Judge's ("ALJ") decision. Mem. in Supp. of Mot. to Reverse or Remand the Decision of the Commissioner, ECF No. 15-1 (March 4, 2024) ("Mem.").

   a.  *Medical Conditions and Diagnoses*

John S. has generalized anxiety disorder. Social Security Transcripts ECF No. 11 at 19 (Jan. 3, 2024) ("Tr.").

John S.'s generalized anxiety diagnosis, features of autism spectrum disorder, and symptoms of anxiety and depression that are consistently noted throughout his medical records. Tr. at 361–2, 384, 429–33.[4]

Because of John S.'s anxiety and depression, he has trouble with sleeping, punctuality, social functioning, dealing with stress, traveling to unfamiliar places, concentration, driving, playing an instrument, response times, mental processing, and suffers from depressed mood, muscle tension, and panic attacks. Tr. at 361–362, 364, 383–85, 429–33, 775–779. John S. takes medication for his anxiety, Seroquel, that causes side effects from mild sedation to sleepiness and drowsiness. Tr. at 363, 383.

   b.  *Medical Opinions and Assessments*

There are six medical opinions in the record that are relevant to the parties' briefs. The

---

[3] This section generally summarizes John S.'s medical history and conditions but given the length of the record, it is not exhaustive. The factual background provided here focuses on the aspect of John S.'s medical history that underlies the parties' dispute, *i.e.*, his anxiety and depression their effects on his ability to concentrate and work.
[4] When the Social Security Transcript is cited by page number, these numbers refer to the ECF assigned page numbers listed in blue at the top of the PDF file.

2

Court notes the pertinent parts of each. Leveille (State) (99-100); Johnston (424-428); Jacobs (384-387); Gergovich (771-774).

On August 27, 2018, the state agency reviewing psychologist, JoAnne Coyle, Ph.D., determined that John S. had non-severe impairments of anxiety and obsessive-compulsive disorders; depressive, bipolar, and related disorders; and substance addiction disorders (alcohol), and a mild limitation in all four paragraph B criteria. Tr. at 84–85.

On September 13, 2018, Maria Motlagh, M.D. completed a Residual Functional Capacity ("RFC") questionnaire assessment for John S. where she noted that he suffered from generalized anxiety disorder. Tr. at 367. She also noted that John S. suffered from the following signs and symptoms: sleep disturbance, mood disturbance, social withdrawal or isolation, decreased energy, recurrent panic attacks, generalized persistent anxiety, and mild to moderate difficulty thinking or concentrating. *Id.* Regarding John S.'s Seroquel medication, Dr. Motlagh notes that it "might cause sleepiness [and] drowsiness." Tr. at 368. Dr. Motlagh marked that John S.'s impairments would cause him to be absent from work "more than three times a month." Tr. at 369. Dr. Motlagh listed that John S. has substantial loss of ability to: "to maintain regular attendance and be punctual within customary, usually strict tolerances," "to work in coordination with or proximity to others without being unduly distracted," "to deal with normal work stress," and "to travel in unfamiliar places." Tr. at 370–71.

On May 2, 2019, state agency reviewing psychologist Christopher Leveille, Psy.D., conducted a reconsideration analysis where he found John S. to have non-severe impairments of anxiety and obsessive-compulsive disorders; depressive, bipolar, and related disorders; and substance addiction disorders (alcohol), and a mild limitation in all four paragraph B criteria. Tr. at 104–05.

On February 26, 2020, J. Dennis Johnston, Ph.D., conducted a neuropsychological examination "[t]o determine whether he has Autism Spectrum Disorder (ASD), and any associated neurocognitive difficulties." Tr. at 429. Dr. Johnston observed that during the examination John S. "did seem anxious. . . his response latencies were long and his responses were very slow. He seemed unsure of himself, as if he wanted to be careful to get things right as he was responding." Tr. at 431. Dr. Johnston found that John S. was borderline in his processing speeds; "presented as someone who was highly anxious"; and "generated high scores on scales pertaining to depression, anxiety, and social anxiety." Tr. at 432. Dr. Johnston diagnosed John S. with generalized anxiety disorder, finding that while "the patient does have some symptoms of ASD. It is just that the primary issue for him has more to do with anxiety than with autism." Tr. at 433. Dr. Johnston also noted that John S. "does tend to process things slowly, so should take this into account in planning activities. In other words, he may need to allow extra time to get things done." *Id.*

On April 24, 2020, John S.'s psychiatrist, Nina Jacobs, M.D., conducted a psychological/mental impairment examination of him. Tr. at 389–92. Dr. Jacobs had been seeing John S. every one to three months since April 11, 2019, and had diagnosed him with generalized anxiety disorder and recurrent major depression. Tr. at 389. She noted that John S. has mild sedation from the Seroquel medication he is prescribed. *Id.* Dr. Jacobs' clinical findings included John S. having significant anxiety, becoming overwhelmed, irritable, and difficulty with concentration and thinking clearly when anxious. *Id.* Dr. Jacobs identified John S.'s signs and symptoms as: depressed mood, sleep disturbance, difficulty concentrating or thinking, muscle tension, panic attacks followed by a persistent concern or worry about additional attacks or their consequences, and disproportionate fear or anxiety about at least two different social situations.

Tr. at 390. Dr. Jacobs rated John S. as having moderate to marked limitations in interacting with others, concentrating, and in pace and marked limitations in adapting in the workplace and managing oneself in the workplace. Tr. at 391. Dr. Jacobs marked that John S. would, on average, miss more than four days of work a month if he were trying to work full time and would generally have difficulty working because he has persistent anxiety and is easily overwhelmed. Tr. at 392.

Finally, on May 10, 2023, John S.'s psychotherapist, Chris Gergovich, LSCW, conducted a psychological/mental impairment assessment of him. Tr. at 776–779. John S. has attended outpatient psychotherapy around two to four times a month with LSCW Gergovich since July 28, 2020. Tr. at 776. LSCW Gergovich's diagnoses for John S. include anxiety, major depressive disorder, and alcohol use. *Id.* LSCW Gergovich found that John S.'s "anxiety and depression are such that patient is unable to maintain a job and struggles at times with activities of daily living, due to marked periods of depression." *Id.* LSCW Gergovich listed John S.'s signs and symptoms as: significant cognitive decline from a prior level of functioning, depressed mood, detachment from social relationships, instability of interpersonal relationships, decreased energy, and difficulty concentrating or thinking. Tr. at 777. LCSW Gergovich noted that John S. had a marked limitation in adapting in the workplace, that John S. would likely be absent more than four days a month from full-time work, and finally that he "has a history of attempted part time positions that he left due to severity of depressive and anxiety symptoms." Tr. at 778, 779.

        ii.    <u>Disability Application</u>

On July 28, 2018, John S. filed an application for SSI benefits alleging disability due to anxiety and depression starting on January 1, 2003. Tr. at 216, 251. His application was denied initially on August 28, 2018, and upon reconsideration on May 3, 2019. Tr. at 126, 142.

John S. appeared, with counsel, before Administrative Law Judge ("ALJ") Brien Horan on May 19, 2020, where he amended his onset date to July 25, 2018. Tr. at 38, 44.

On May 27, 2020, the ALJ denied John S.'s claims. Tr. at 16.

At Step One, the ALJ found that John S. had not engaged in substantial gainful activity since July 25, 2018, the amended onset date. Tr. at 19. At Step Two, the ALJ found that John S. had a severe impairment of generalized anxiety disorder. *Id.* At Step Three, the ALJ found that John S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. Tr. at 20.

In determining John S.'s residual functional capacity ("RFC") the ALJ found that John S. had the ability to perform "a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to perform simple, routine tasks with frequent interaction with supervisors and occasional interaction with coworkers and the general public." Tr. at 21. At Step Four, the ALJ found that John S. had no past relevant work. Tr. at 25. At Step Five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* As a result, all together, the ALJ concluded that John S. was not disabled under 1614(a)(3)(A) of the SSA. Tr. at 27.

John S. unsuccessfully appealed the ALJ's decision to the Appeals Council, the Appeals Council denied John S.'s request, however, on February 5, 2021, making the ALJ's decision the Commissioner's final agency decision. Tr. at 6. Following the unsuccessful appeal to the Appeals Council, John S. appealed to this Court. Tr. at 607; *see also* Complaint, *John S. v. Commissioner of Social Security*, 21CV493(JCH) (D. Conn. April 8, 2021). On February 2,

2022, this Court reversed the final decision of the Commissioner and remanded the case back to the Commissioner for further administrative action. Tr. at 607.

On April 18, 2022, The Appeals Council issued an order vacating the final decision of the Commissioner because the ALJ did not consider the consistency factor under 20 C.F.R. § 416.920c(c)(2) when evaluating the opinions of Drs. Jacobs and Motlagh. Tr. at 618. After the Appeals Council Order, the ALJ held another hearing on June 5, 2023. Tr. at 569. On September 8, 2023, the ALJ issued another unfavorable decision. Tr. at 546.

In this decision at Step One, the ALJ found again that John S. had not engaged in substantial gainful activity since July 25, 2018, the amended onset date. Tr. at 551. At Step Two, the ALJ found that John S. had a severe impairment of generalized anxiety disorder and moderate depressive disorder. *Id.* At Step Three, the ALJ again found that John S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 416.920(d), 416.925, and 416.926. Tr. at 552. In determining John S.'s residual functional capacity ("RFC") the ALJ found that John S. had the ability to perform "a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine tasks and requires a stable and predictable work environment. The claimant can have occasional interaction with others and no work with the general public." Tr. at 554. At Step Four, the ALJ again found that John S. had no past relevant work. Tr. at 560. At Step Five, the ALJ again found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. at 561 As a result, all together, the ALJ again concluded that John S. was not disabled under 1614(a)(3)(A) of the SSA. Tr. 562.

7

The ALJ's new decision became the Commissioner's final agency decision on the 61st day following the decision because John S. did not file any written exceptions. *See* Tr. at 547.

John S. then filed this lawsuit. *See* Complaint, ECF No. 1 (November 8, 2023).

### B. Procedural History

On March 4, 2024, John S. filed a motion to reverse the decision of the Commissioner denying his claim for SSI. Mot. to Reverse the Decision of the Comm'r, ECF No. 15 ("Mot.")

On May 2, 2024, the Commissioner filed a motion to affirm the decision of the Commissioner. Mot. to Affirm the Decision of the Comm'r, ECF No. 19 ("Opp'n").

On May 15, 2024, John S. filed a reply to the Commissioner's motion. Reply to Response to Mot. to Reverse the Decision of the Comm'r, ECF No. 20 ("Reply").

## II.   STANDARD OF REVIEW

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "In reviewing a final decision of the [Social Security Administration or] SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on the correct legal standard." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). It is generally "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999) (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To determine "whether the agency's

8

findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (*per curiam*)).

When "the Commissioner's decision applies the correct legal principles and is supported by substantial evidence, that decision will be sustained." *Kumar v. Berryhill*, No. 3:16-CV-1196 (VLB), 2017 WL 4273093, at *4 (D. Conn. Sept. 26, 2017) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). On the other hand, "[a]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). A court generally need not remand a case if the ALJ only committed harmless error, such that "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### III. DISCUSSION

#### A. Eligibility for SSI Benefits

In order to be entitled to benefits under the Social Security Act, a plaintiff must demonstrate that they have a disability, defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This determination is made through a five-step evaluation.

First, the ALJ must determine whether the claimant is engaged in substantial gainful

activity. *Id.* § 404.1520(b).

If they are not engaged in such activity, the ALJ must proceed to Step Two to determine whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* § 404.1520(c). An impairment will be considered severe if it significantly limits a claimant's ability to perform "basic work activities." *Id.*

If the claimant has a medically determinable severe impairment, the ALJ proceeds to Step Three to determine whether any identified severe impairments meet or medically equal those identified in Appendix 1. *Id.* § 404.1520(d). These impairments are *per se* disabling, assuming a claimant meets the duration requirement. *Id.*

If the claimant's impairments are not *per se* disabling, then the ALJ proceeds to Step Four, which entails assessing the claimant's residual functional capacity, or their ability to work in light of their limitations. *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e), 404.1545(a)(1).

At Step Five, the ALJ must establish whether the claimant's residual functional capacity will allow the performance of any past relevant work. If the claimant is unable to perform past relevant work, the ALJ bears the burden of proving that, accounting for the claimant's age, education, work experience, and residual functional capacity, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* § 404.1520(g)(1). If the ALJ proves all of that, then the claimant is not disabled. *Id.*

The claimant bears the burden of proving the requirements of Steps One through Four, after which the burden shifts to the Agency to prove that the claimant is capable of working. *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("The burden is on the claimant to prove that he is disabled within the meaning of the Act . . . . However, if the claimant shows that his impairment renders him unable to perform his past work, the burden then

shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform.").

### B. The Decision of the ALJ

John S. argues that the ALJ's decision erred in three main ways.

First, he argues that the ALJ did not evaluate the medical opinions in the record correctly because she failed to properly discuss the consistency of the medical opinions with each other, and improperly noted the medical opinions' use of check-boxed forms as a reason to reject them. Mot. at 8–9, 11–12.

Second, John S. argues that the ALJ's citation to conservative care as a reason for disregarding the opinion of Dr. Motlagh was invalid. Mot. at 9.

Finally, John S. argues that the ALJ conducted a deficient RFC analysis because she rejected all of the medical opinions in the record and instead relied on her own lay interpretation of the evidence. Mot at. 9–11.

The Court addresses each of these arguments in turn.

#### 1. The Opinion Evidence

"[T]he Commissioner 'will not defer or give any specific evidentiary weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources.'" *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (quoting 20 C.F.R. § 404.1520c(a)). Instead, in considering various medical opinions, the Commissioner is required to consider factors including "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or

contradict a medical opinion or prior administrative medical finding.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

The ALJ must "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." *Id.* (alterations in original) (citation and internal quotation marks omitted). The ALJ is not required to specifically discuss each of the factors, but they must expressly consider "the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[S]upportability . . . and consistency . . . are the most important factors . . . [and] [t]herefore, [the ALJ] will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] determination."); *see also Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[I]n cases where the new regulations apply, an ALJ must explain [their] approach with respect to the first two factors when considering a medical opinion."), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

For the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion(s) . . . , the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

For the consistency analysis, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). In doing this, "an ALJ should not consider the persuasiveness of each medical opinion in a vacuum but must adequately account for the consistency of the various opinions with each other." *Jennifer G. v. Comm'r of Soc. Sec.*, No. 5:22-CV-996 (MAD/ML), 2023 WL 8435991, at *8 (N.D.N.Y. Sept. 6,

12

2023) (collecting cases) (internal quotation marks omitted), *report and recommendation adopted sub nom. Jennifer G. v. Comm'r of Soc. Sec.*, No. 5:22-CV-996 (MAD/ML), 2023 WL 7277260 (N.D.N.Y. Nov. 3, 2023); *Glenn G. v. Kijakazi*, No. 3:22-CV-824 (RMS), 2023 WL 2477501, at *11 (D. Conn. Mar. 13, 2023) (noting that "the ALJ failed to assess and compare Dr. Cordier's opinion in relation to other medical opinions in the record').

John S. argues that the ALJ committed legal error by failing to properly discuss the consistency of the medical opinions with each other because: (1) the ALJ concluded that Drs. Motlagh and Jacobs and LCSW Gergovich's opinions were not consistent with each other even though they all found that John S. would be absent at least three days a month from full-time work; (2) the ALJ failed to comment that both Dr. Jacobs and LCSW Gergovich opined that John S. had a marked limitation in adapting in the workplace; and (3) the ALJ failed to compare similar functional limitations from Drs. Motlagh, Johnston, and Jacobs. Mot. at 8–9.

In response, the Commissioner argues that the ALJ is not required to compare the consistency of one opinion with another, and that the ALJ correctly made findings that (1) Dr. Motlagh's opinion was not well supported by Dr. Motlagh's own treatment notes, little more than a checkbox form, largely vague, and not consistent with the overall record; (2) Dr. Jacobs' treatment notes did not support the limitations his opinion identified, and was not consistent with the longitudinal record; (3) Dr. Johnston's medical statement was only partially consistent with the longitudinal record and reconciled conflicting pieces of evidence and found Dr. Johnston's medical statement minimally persuasive; and (4) Mr. Gergovich's opined absenteeism from work was not well supported by any narrative explanation nor by treatment notes and that the evidence of record did not establish a marked limitation in adapting in the workplace. Opp'n at 3–11.

In reply, John S. argues that the similarities between each of the four different medical opinions should be indicative of their persuasiveness towards the consistency factor and that "[t]he ALJ's failure to acknowledge how these medical opinions are consistent or inconsistent with each other leaves a large gap in the ALJ's reasoning and presents a situation where the ALJ impermissibly viewed these opinions in a vacuum." Reply at 1–2.

The Court disagrees.

In its decision on remand denying John S.'s claim for SSI, the ALJ did not find all of the medical opinions in the record persuasive. *See* Opp'n at 12 ("the ALJ did not find any of the opinions of record persuasive"); Tr. at 556 ("The State agency psychological consultant . . . assessments are not persuasive"); Tr. at 557 ("Maria Motlagh . . . this assessment is not persuasive"); Tr. at 557–558 ("Nina Jacobs . . . the undersigned finds this assessment less persuasive); Tr. at 558 ("J. Dennis Johnston . . . this assessment is considered minimally persuasive"); Tr. at 558–559 ("Chris Gergovich . . . this assessment is minimally persuasive"). But the ALJ did find a sufficient basis for his decision through relying on the record as a whole, including the opinions of the State Agency medical consultants, such as the finding that "the claimant's physical impairments were nonservere." Tr. at 554 (citation omitted). In the ALJ's view, "[t]hese findings were supported by the evidence available at the time, which did not contain much by way of physical symptom complaints." *Id.* And were "generally consistent with the longitudinal record." *Id.* Because of other physical activities engaged in by John S. such as the ability "to garden, mow the lawn, and perform other household activities with few to no physical complaints," *id.* (citation omitted), the ALJ found "these assessments [to be] persuasive." *Id.*

Moreover, as to the impairments identified by the ALJ, specifically as it related to the "claimant's history of mental health symptoms and corresponding functional deficits," *id.* at 555 (citation omitted), based on the record as a whole, including treatment records, *see, e.g. id.* ("[T]he claimant was often observed with normal mental status findings during treatment visits. . . [and] Treatment notes continue to include recommendations for ongoing outpatient treatment without indication that more than existing conservative modalities were needed."), the ALJ determined John S.'s "residual functional capacity assessment, which is supported by the claimant's subjective symptom reports as well as the objective medical evidence of record." *Id.* The ALJ also "provided certain workplace limitation in order to accommodate the claimant's severe impairments in the workplace," *id.*, and determined that these measures were "more than sufficient to account for the claimant's breakthrough mental health symptoms and thus his severe impairments in the workplace." *Id.*

In doing so, the ALJ properly considered the consistency of the various medical opinions with the record as a whole, and whether such medical opinions were consistent with all of the medical and nonmedical evidence regarding the claim. *See David C. v. Comm'r of Soc. Sec.*, 1:22-CV-00965, 2024 WL 376598, *4 (W.D.N.Y. February 1, 2024) (finding that the ALJ was not required to specifically assess the consistency between two opinions as long as he considered their consistency with the record as a whole); *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-cv-1085, 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with all medical and nonmedical evidence in a claim."); *Rushford v. Kijakazi*, No. 23-cv-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28,

15

2023) ("As required, the ALJ addressed each opinion in turn, explaining why – or why not – he found each opinion to be 'supported' by the record and 'consistent' with the other evidence.").

Just as significantly, although by no means dispositive, the ALJ properly gave limited weight to some of the medical opinions because of the use of check-box forms to opine on critical medical issues in this case. *See* Tr. at 556–560 (ALJ Horton's discussion of the persuasiveness of all the medical opinions in the record). Indeed, as the Second Circuit has noted "a treating physician's medical opinion is not entitled to controlling weight where it is provided in a check-box form and is unaccompanied by meaningful medical evidence in the administrative record." *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022). As a result, here, the ALJ's inquiry had to focus "on the substance of the medical opinion at issue — not its form – and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert." *Id.* (citation omitted).

Accordingly, at least on this record, the ALJ did not commit error, and the decision will not be reversed on that basis.

2. Conservative Care

The Second Circuit "has found that conservative treatment may weigh against a disability finding" *Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (citing *New Haven Terminal Corp. v. Lake*, 337 F.3d 261, 266 (2d Cir. 2003)). However, "the opinion of the treating physician [is not] to be discounted merely because he has recommended a conservative treatment regimen." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

John S. argues that the ALJ erred in citing "conservative care as a basis for disregarding Dr. Motlagh's opinion, [because it] is not a valid reason to reject her limitations." Mot. at 9.

The Commissioner argues that the ALJ was permitted to point out the inconsistency of Dr. Motlagh's findings and his ongoing conservative care. *See* Opp'n at 6–7.

The Court agrees.

While an ALJ cannot solely base their rejection of a medical opinion just because of a conservative care treatment, it can be one reason among many that made an ALJ find a medical opinion to not be persuasive. *Compare Burgess*, 537 F.3d at 129 ("[T]he opinion of the treating physician [is not] to be discounted merely because he has recommended a conservative treatment regimen.") *with Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (finding that the ALJ properly cited a treating physician's conservative treatment as a part of the reason not to give the treating physician's opinion "controlling or significant weight"), *and* Guerra v. Colvin, 618 F. App'x 23, 25 (2d Cir. 2015) (finding that the ALJ's "assessment of [the treating physician's] credibility regarding the severity of her symptoms is supported by substantial evidence" when "conservative therapy" was one part of the assessment).

Accordingly, because the ALJ's assessment of Dr. Motlagh's opinion was not solely reliant on Dr. Motlagh's conservative care, the ALJ did not commit error in this respect. *See* Tr. at 557 (The ALJ noting "unremarkable" treatment notes, a lack of "emergency department visits or inpatient psychiatric care" and "conservative care" as reasons why Dr. Motlagh's assessment was inconsistent and unpersuasive).

### 3. The Residual Functional Capacity Determination

Finally, consistent with the analysis above, the ALJ did not commit error in its residual functional capacity determination.

The RFC assessment is an administrative determination for which the ALJ bears "the final responsibility." 20 C.F.R. § 404.1527(d)(2). When making an RFC determination, the

17

ALJ's function is to weigh the evidence as a whole and resolve any conflicts. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). An ALJ need not necessarily engage in a function-by-function analysis in order to fully assess a claimant's RFC. *Cichocki v. Astrue*, 729 F.3d 172, 173–74 (2d Cir. 2013) ("[T]he failure explicitly to engage in such a function-by-function analysis does not constitute *per se* error requiring remand."). Instead, the relevant inquiry is whether the ALJ applied the correct legal standards and whether the determination is supported by substantial evidence. *Id.* at 177.

An ALJ's conclusions "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4 th 64, 78 (2d Cir. 2022). However, "[t]he ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("it is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion'" (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983))).

John S. argues that the ALJ's RFC analysis was deficient because she rejected all the medical opinions in the record and made her own lay interpretation of the evidence. Mot. at 9–10.

The Commissioner argues in response that the ALJ properly evaluated the medical opinions in the record and did not find them persuasive. Opp'n at 12. In the Commissioner's view, the ALJ then resolved evidentiary conflicts and arrived at an "RFC that accounted for the record as a whole" and "tailored the restrictions in the RFC to [John S.'s] specific

circumstances." *Id.*

John S. replies by arguing that the ALJ improperly "focused on bare medical findings such as mental status examinations to reach an RFC conclusion while ignoring Plaintiff's disabling symptoms." Reply at 3.

The Court disagrees.

As discussed more thoroughly above, while the ALJ did not find any of the medical opinions in the record persuasive as a whole, after the ALJ evaluated the different medical opinions in the record, the ALJ then proceeded to resolve any evidentiary conflicts identified and formulated an RFC analysis that was well-cited and based on the medical evidence in the record and the reports of John S.'s own symptoms.[5] By doing this, the ALJ did not commit legal error in the RFC analysis, but rather conducted a proper RFC analysis. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *see also Schillo*, 31 F.4th at 77–78 (finding that the ALJ did not err in affording limited weight to medical provider's opinions and formulating an RFC analysis when "The ALJ found notable inconsistencies between Dr.

---

[5] "Accordingly, there are certain inconsistencies within the record that lead to the reasonable conclusion that the claimant's symptoms are not as limiting as alleged. . . . Based on this evidence and the noted inconsistencies therein, the undersigned finds that the claimant's impairments, either singly or in combination, are not as limiting as alleged. In sum, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the claimant's subjective symptom reports as well as the objective medical evidence of record. The undersigned has provided certain workplace limitations in order to accommodate the claimant's severe impairments in the workplace. For example, he was limited to simple, routine tasks in a stable and predictable work environment to account for his moderate limitation in concentrating, persisting, and maintaining pace, particularly due to the claimant's symptoms of anxiety, concentration and focus issues, and tendency to get overwhelmed regarding tasks or slowed processing speeds. Likewise, because of the claimant's anxiety around others, he was limited to occasional interactions with others and no work with the general public to accommodate the moderate limitation in interacting with others. The combination of these restrictions is more than sufficient to account for the claimant's breakthrough mental health symptoms and thus his severe impairments in the workplace." Tr. at 559–560.

Picciano's conclusions and the longitudinal records of Schillo's physical health . . . substantial evidence supported the ALJ's decision to afford only limited weight to the opinion of Dr. Picciano. . . . Having concluded that the ALJ's assignment of lesser weight to Drs. Shukri's and Picciano's medical opinions was permissible, we also hold that substantial evidence supports the ALJ's ultimate RFC determination. As the ALJ accorded the treating physicians' opinions lesser and not no weight, she still considered their conclusions to assess Schillo's RFC. The ALJ also looked to the other sources in the administrative record, including MRI results, x-ray results, and notes documenting Schillo's visits with other medical providers. Using these opinions and data points, the ALJ laid out with specificity Schillo's physical capabilities").

Accordingly, the ALJ did not commit legal error in this way, or any other, as discussed above.

## IV. CONCLUSION

For the reasons explained above, John S.'s motion is **DENIED**, and the Commissioner's motion is **GRANTED**. The decision of the Commissioner is **AFFIRMED**

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED** at New Haven, Connecticut, this 7th day of February, 2025.

                                           */s/ Victor A. Bolden*
                                           Victor A. Bolden
                                           United States District Judge